[PHILADELPHIA, FEBRUARY 19, 1834.]

STILES et al. *against* BRADFORD.

IN ERROR.

A deposition read by one party on the argument of a rule to show cause why a feigned issue should not be directed to try his right to money in court, cannot be read in evidence by the opposite party on the trial of the issue, when the witness is himself in court, and capable of being examined.

Perhaps the reading of the deposition might be deemed an admission of the competency of the witness, so far as respects existing objections on the side of the party reading it, but it cannot be deemed such an admission of its contents, as to supercede the rule that the best evidence in the power of the party must be given.

On the trial of a feigned issue, to try the right of *B.* to have and receive, according to the amount of his liens, (under the revival by *scire facias* of certain judgments, the lien of which had expired by lapse of time) the money in court, in which it was agreed that the defendants in the issue should be entitled to the benefit of any question that might arise in relation to the lien of a judgment of revival, or under the original judgment, the defendants cannot inquire into the consideration of such judgments, or travel into the cause of action on which they were founded.

Where real estate held in the name of *R.* but really the property of *T.* is mortgaged by *R.* at the instance of *T.* and for his benefit, *T.* is the real mortgagor; and if it be sold by the sheriff by virtue of proceedings on the mortgage, a judgment creditor of *T.* is entitled to the surplus proceeds of the sale, in preference to a subsequent judgment creditor of *R.* who at the time of obtaining his judgment, was acquainted with all the circumstances of the ownership of the property, and of its being held by *R.* for the purpose of evading prior judgments against *T.*

Notice given by a judgment creditor of *T.* at a sheriff's sale of a leasehold interest as the property of *R.*, that it was not really the property of *R.* but of *T.*, and that his judgment was a lien upon it as such, is not an election to resort to that source for payment, and a waiver of his right to a fund on which he has a good claim, and which is available for the payment of his debt.

Under the act of the sixteenth of *April*, 1827, " relative to the distribution of money arising from sheriffs' and coroners' sales," the court has a right, where the estate has been sold as the property of *R.* under process against him, but is alleged to have been really the property of *T.* to direct a feigned issue to try the right of a judgment creditor of *T.* to the money in court.

THIS was a writ of error to the District Court for the City and county of *Philadelphia*, in which bills of exceptions to the opinion of the court on points of evidence, and to the charge of the court, were returned with the record. The case was a feigned issue, directed by that court to try the right of *Thomas Bradford* to certain moneys arising from a sheriff's sale of real estate, by virtue of a *levari facias*.

*Thomas Bradford*, the defendant in error, was plaintiff below, and *Robert Stiles, Timothy Caldwell, Isaac Harbert, Sarah Stephens, Joseph Shoemaker*, and the Bank of North America, the plaintiffs in error, were defendants below. The facts were these :—

*Thomas T. Stiles*, being indebted to *Thomas Bradford* on certain promissory notes, suits were brought and judgments obtained upon them in the year 1819. *Stiles* soon after began to purchase real estate in the city and county of *Philadelphia*, and with a view to screen it from the judgments of *Bradford*, had some portions of the

property conveyed to his brother *Robert Stiles,* (who was himself without the means of purchasing property,) and other portions of it to his son-in-law, *Joseph Shoemaker.*   The property out of which the moneys in court were raised, was situate in *Quince* street, and was purchased by *Thomas T. Stiles,* and paid for with his money, but the conveyance was made to *Robert Stiles.*   Having occasion for money in the year 1822, *Thomas T. Stiles* borrowed sixteen hundred dollars from the American Fire Insurance Company, and gave them as security a mortgage on the *Quince* street property, together with a bond and warrant of attorney, all executed by *Robert Stiles;* that company being fully apprised, through their president and solicitor, of the circumstances attending the ownership and tenure of the property, and of the reasons for its being held as it was.   By lapse of time the original lien of *Bradford's* judgments expired, but on the third of *April,* 1829, two of them, amounting together to the sum of sixteen hundred and ninety-eight dollars and seventy-five cents, were revived. On the sixteenth of *April,* 1829, *Thomas T. Stiles,* who was then indebted to *Isaac Harbert* on two notes, amounting to fifteen hundred dollars, obtained from him and *Timothy Caldwell* their endorsement, for his accommodation, of a note for four thousand dollars, (for which he received the money,) and on the same day, to indemnify them against any loss on this note, gave them a mortgage executed by *Robert Stiles,* on certain property in *Twelfth* street, which belonged to *Thomas T. Stiles,* but was held in the name of *Robert,* together with *Robert's* bond and warrant of attorney, originally restricting the judgment to be entered upon it to the *Twelfth* street property.   By virtue of this power of attorney, judgment was entered on the seventeenth of *April,* 1829.   On the twelfth of *July,* 1829, *Robert Stiles,* by agreement filed and entered on the record, agreed to remove the restriction on the judgment of *Caldwell* and *Harbert,* and give it the effect of a general judgment ; and *Thomas T. Stiles,* a few days after, was made acquainted with this agreement and approved of it.   With the moneys obtained from the note for four thousand dollars, *Thomas T. Stiles* paid *Harbert* the amount of the first note for fifteen hundred dollars, and employed the rest in improving his real estate, with the exception of the *Quince* street property.   These transactions with *Thomas T. Stiles,* were principally conducted by *Harbert,* on behalf of himself and *Caldwell,* with a full knowledge on the part of *Harbert* of the manner in which the property was owned and held, and that the reason of its being so held, was to cover it from the judgments of *Bradford;* but of these circumstances *Caldwell* was ignorant.   In *June,* 1829, *Thomas T. Stiles* became insolvent, and *Harbert* and *Caldwell* took up the note for four thousand dollars.

On the nineteenth of *September,* 1829, *Caldwell* and *Harbert,* by virtue of executions on their judgments, sold the *Twelfth* street property, and a leasehold interest (originally for ninety-nine years,) in the *Gloucester* ferry, as the property of *Robert Stiles.*   At this sale, *Bradford* gave notice, that the *Gloucester* ferry was owned by

*Thomas T. Stiles*, and not *Robert Stiles*, and that it was bound by his judgments. The *Twelfth* street property was sold for six thousand seven hundred dollars, and the sale was afterwards set aside by the court. The *Gloucester* ferry property sold for nine hundred dollars, and the nett proceeds, eight hundred and seventy-nine dollars, were paid to *Harbert* and *Caldwell*, without opposition.

On the thirtieth of *November*, 1829, the American Fire Insurance Company, by virtue of executions on their judgment, sold the premises in question, as the property of *Robert Stiles*, for three thousand two hundred and twenty-five dollars. They received without opposition the amount of their debt, interest and costs, and the balance was paid into court to await its decision.

On the seventh of *December*, 1829, *Caldwell* and *Harbert* sold the *Twelfth* street property, for eight thousand four hundred dollars. The proceeds were applied, as far as necessary, to the payment of prior liens, and the balance, viz. one thousand six hundred and forty dollars, was paid to *Caldwell* and *Harbert*.

The fund paid into court, amounting to fifteen hundred and fifty-one dollars, eighty-seven cents, arising from the sale of the *Quince* street property, was claimed by *Bradford*, by virtue of his judgments of the third of *April*, 1829, against *Thomas T. Stiles*, and by *Timothy Caldwell* and *Isaac Harbert*, who were the only parties to the feigned issue who appear to have set up an adverse claim on the trial. Mrs. *Stephens*, the mother-in-law of *Robert Stiles*, it was stated, had a judgment against him, but its date did not appear, as she declined taking part in the trial of the issue.

An agreement for a feigned issue was drawn up and signed by the parties, which, among other things, provided, " that the costs shall follow the verdict, and under the aforesaid issue, the defendants shall be entitled to the benefit of any question that may arise in relation to the lien of a judgment of revival, or under the original judgment."

On the trial of the cause in the District Court, the defendants, *Harbert* and *Caldwell*, offered in evidence a deposition of *Thomas T. Stiles*, taken by the plaintiff and read by him on the argument of his rule to show cause why the present issue should not be directed to determine his right to the money in count. The plaintiff objected to the reading of the deposition, because *Thomas T. Stiles* was then in court, and could be called by the defendants as a witness. The court rejected the evidence, and the defendants, *Caldwell* and *Harbert* tendered a bill of exceptions to their opinion.

The defendants, *Harbert* and *Caldwell*, proposed, under the agreement for a feigned issue, to inquire what was the consideration of the notes on which the judgments of *Bradford* were founded. The court overruled this offer also, and sealed another bill of exceptions, which was tendered to their opinion.

When the evidence was closed and the arguments of counsel concluded, the PRESIDENT of the District Court before whom the cause

was tried, delivered a charge to the jury, in the course of which, he said, that " the question was, whether the money in court should be appropriated to pay the judgment creditors of *Thomas T. Stiles,* or to pay the judgment creditors of *Robert Stiles.* It was abundantly proved by the evidence, and, he understood, conceded by the defendants' counsel, that the property, by the sale of which the money was made, actually belonged to *Thomas T. Stiles.* The deed was in the name of *Robert Stiles,* but it was manifest, beyond all question, that the beneficial interest belonged exclusively to *Thomas T. Stiles.*

" If the fact were so, the equitable interest of *Thomas T. Stiles* in the property, was bound by the lien of *Bradford's* judgments against him.

" The sale which produced the money in question, was made on a judgment and execution against *Robert Stiles,* and generally speaking, a sale under execution passes no other, or greater interest in the property than the defendant had, and, therefore, the proceeds of such sale shall go to the discharge of liens existing as against his property. This being the general rule of law, the defendants contend, that as the property was mortgaged by *Robert Stiles,* and sold on a judgment and execution against him, the proceeds in question being derived from a sale of *Robert Stiles'* actual or supposed interest in the property, were to be appropriated in payment of the judgment against him.

" In answer it is to be observed, that the mortgage upon which this sale was made, was executed to the American Fire Insurance Company at the instance of *Thomas T. Stiles,* and for his benefit ; and that the officers of that company had a perfect knowledge of all the circumstances. They not only knew that the property was held by *Robert Stiles* in trust for *Thomas T. Stiles,* but they knew also the reason why it was so held, *viz.* to protect it from the lien of *Bradford's* judgment.

" If such are the facts, the mortgage executed by *Robert Stiles* under these circumstances, bound *Thomas T. Stiles'* interest in the property as effectually as if *Thomas T. Stiles* had executed the mortgage in his own name. It was in equity a mortgage by him using the name of *Robert Stiles,* his trustee, for the purpose of giving it a legal form. The lien of *Bradford's* judgment was not displaced by the mortgage, and he has lost his priority only because the lien expired by lapse of time, not having been continued according to the provisions of the act of assembly. On revival of the judgment, the lien, became subject to the priority of the mortgage. *Thomas T. Stiles,* being, therefore, virtually, and to every equitable and just purpose the mortgagor of the property, he was in the suit upon it, the real, and *Robert Stiles* only the nominal defendant. His interest, and the whole of his interest, was sold under the *levari facias.* But the law of distribution would be the same, in case *Robert Stiles* had executed a valid mortgage in fraud of such trust. In such case, equity would displace the interest of *Thomas T. Stiles* only so far as was

necessary to give effect to the mortgage, and the surplus would belong to him or to his creditors. The act of assembly referred to, would, in the case supposed, control the equity of the mortgage altogether, or permit equity in righting one party, to do justice to all. It is, however, an act declaratory of the existing laws, and not introductory of any new rule."

The following points were propounded to the judge, who gave to them the answers annexed:

First point. 'That the interest of *Robert Stiles* was alone sold under the execution, and nothing more.'

*Answer.* 'The interest of both *Robert Stiles* and *Thomas T. Stiles* was sold under the execution.'

Second point. 'That the judgment creditors of *Thomas T. Stiles* have no claim upon the fund in court.'

*Answer.* 'The judgment creditors of *Thomas T. Stiles* are entitled to the fund in court.'

Third point. 'That at the sale on the thirtieth of *November*, 1829, it was competent for the plaintiff to give notice of his claim on it, as the property of *Thomas T. Stiles*, and that if he he did not, it is his own laches, and the want of notice cannot be used to the disadvantage of the defendants, *Caldwell* and *Harbert.*'

*Answer.* 'The plaintiff was not required by law to give notice of his claim at the time of sale, on the thirtieth of *November*, 1829, nor are his rights at all affected by not having done it.'

Fourth point. 'That the plaintiff made his election on the thirtieth of *September*, 1829, to look to the interest of *Thomas T. Stiles*, and not to the interest of *Robert Stiles*, in the property held by *Robert Stiles* in trust for or by the fraud of the parties.'

*Answer.* 'There is no evidence in the cause showing that the plaintiff made his election on the thirtieth of *September*, 1829, or at any other time, to look to the other property of *Thomas T. Stiles*, for payment, and to allow the fund in court to go to the creditors of *Robert Stiles.*'

Fifth point. "That *Robert Stiles* had a good title as against *Thomas T. Stiles*, and that equity would not decree a reconveyance of the property for the benefit of the creditors of *Thomas T. Stiles*, to the injury of the creditors of of *Robert Stiles*, until the accounts are settled and balance paid.'

*Answer.* 'The fund in court is liable for charges incurred by reason of the trust: but there is no evidence of the existence of such charges.'

The judge concluded his charge by observing, " If my view of the evidence is right, and the witnesses have spoken the truth in the matter, the plaintiff is entitled to the verdict of the jury."

The counsel of the defendants *Harbert* and *Caldwell*, excepted to the charge of the court, and in this court filed the following specifications of error:

(Stiles et al. *v.* Bradford.)

1st. Because the court erred in directing an issue in the case to determine the right of the plaintiff below to the fund in court.

2nd. Because the court below refused to permit the defendant below to read the deposition of *Thomas T. Stiles,* taken by the plaintiff in this case.

3rd. Because the court below refused to permit the defendants to ask of *Thomas T. Stiles* the following question : ' What was the consideration of the notes for which the judgments were obtained by the plaintiff against *Thomas T. Stiles ?'*

4th. Because the court refused to permit the defendants below to show that the consideration had failed, for which the judgment below was given.

5th. Because the court erred in charging the jury,—

1. That more than the interest of *Robert Stiles* was sold under the execution.
2. That the judgment creditors of *Thomas T. Stiles* have a claim on the fund in court.
3. That the plaintiff below had the right to the proceeds of the execution, before any of the other claimants, including the plaintiffs in error.
4. That the plaintiff below, under any view of the case, had a right to recover and receive the fund in court.
5. That notice to *Isaac Harbert,* one of the defendants, was notice to the other defendant, *Timothy Caldwell.*
6. That the election of the plaintiff on the 30th of *September,* 1829, to look to the interest of *Thomas T. Stiles,* did not bind him, nor impair his right to recover.

Additional specification :

Because the court took from the jury the consideration of the question whether *Robert Stiles* had any lien on the property, for any advances made by him to *Thomas T. Stiles* on account of the property.

Errors were also assigned in this court on the part of Mrs. *Stephens* and *Robert Stiles,* who took no part in the trial of the feigned issue. They were as follows :

1. The court erred in directing an issue to try the claim of *Thomas Bradford, Sr.* to the fund in court, because the property mentioned in the feigned issue, and from which the fund therein mentioned was raised, was levied upon and sold as the property of *Robert Stiles* alone, no title having passed to the purchaser except that of the said *Robert Stiles,* and no one having any claim to the fund except the lien creditors of the said *Robert Stiles* as is expressly provided for by the act of assembly.

2. The court erred in permitting the issue to be tried by the jury, because *Thomas Bradford, Sr.,* according to the terms of the feigned issue, was a judgment creditor of *Thomas T. Stiles,* and not of *Robert Stiles ;* and if the property sold was in fact the property of *Thomas T. Stiles,* and not of *Robert Stiles,* a sale by the sheriff of said proper-

(Stiles et al. *v.* Bradford.)

ty as the property of *Robert Stiles* could not disturb the interest of *Thomas. T. Stiles* in said property, or diminish the force and legal effect of the lien thereon of the judgment of the said *Thomas Bradford, Sr.*

3. The court erred in giving judgment for *Thomas Bradford, Sr.* under the feigned issue aforesaid, because the whole proceedings at the instance of the said *Bradford*, was irregular, erroneous and illegal, and therefore furnished no lawful ground upon which the said judgment could be entered.

*F. E. Brewster* for *Sarah Stephens* and *Robert Stiles*, cited act of 1705, sec. 6, 7. *Purd. Dig.* 289. *Freedly* v. *Sheetz*, 9 *Serg. & Rawle*, 156. *Auwerter* v. *Mathiot*, 9 *Serg. & Rawle*, 397. *Weidler* v. *The Farmers Bank of Lancaster*, 11 *Serg. & Rawle*, 134.

*J. Randall* for *Caldwell* and *Harbert*, cited *Maclay* v. *Work*, 10 *Serg. & Rawle*, 194. Act of 1700, sec. 1 *Purd. Dig.* 288. *Smith* v. *Painter*, 5 *Serg. & Rawle*, 223. *Harrison* v. *Waln*, 9 *Serg. & Rawle*, 318. *Walters* v. *Pratt*, 2 *Rawle*, 265.

The court declined hearing *V. L. Bradford* and *Bradford*, for the defendant in error.

The opinion of the court was delivered by

SERGEANT J.—[Who after stating the principal facts of the case, proceeded as follows.]—1. On the trial of this cause in the court below, the defendants *Harbert* and *Caldwell* offered in evidence a deposition of *Thomas T. Stiles*, which had been taken on behalf of the plaintiff, and read by him on the argument of the rule to shew cause why the feigned issue should not be directed, to try the plaintiff's right to the money. But it was rejected, because *Thomas T. Stiles* was then in court, and could be called by the defendants as a witness. It is now contended, that the defendants had a right to use the deposition, inasmuch as it had been produced and read by the plaintiff on the hearing of the rule; and the case of *Maclay* v. *Work*, 10 *Serg. & Rawle*, 194, is relied on, where it was held, that if a party has produced a letter in evidence at a former trial, it is competent evidence for the other party at a subsequent trial, the previous production of it being considered as an admission of its competency. This deposition seems to have been taken under one of the rules of the District Court, which requires, that on all motions or rules to show cause, on the hearing of which facts are to be investigated, the testimony shall be taken by deposition ; and no witnesses are to be examined at the bar, but by special and previous order of the court; so that the taking of the testimony by deposition, in this case, was not altogether a voluntary act of the plaintiff, but required by the rule of court, for the more easy and expeditious despatch of business. In this it differs from the case cited, where the production of the letter was entirely a voluntary act of the party. But there is a still greater difference. Evidence by deposition, on a trial at common law, is

(Stiles et al. *v.* Bradford.)

of a secondary character, and is therefore, encountered by a rule of law, which forbids such evidence, when better evidence exists, and is in the power of the party.   The oral testimony of the witness in the presence of the court and jury, was much better evidence than his deposition could be; and as it was in the power of the defendants, they were bound to resort to it.   They could not substitute a kind of proof inferior in its nature.   It is not easy to perceive a better reason for allowing a deposition under such circumstances, than there would be to permit a party, when a witness was present, instead of calling him, to produce evidence of what that witness swore on a former trial when called by the opposite party, which would scarcely be attempted.   Perhaps, the reading of the deposition might be deemed an admission of the competency of the witness, so far as respected existing objections on the side of the party reading it, but it cannot be deemed such an admission of the contents of the deposition as to supersede the usual and salutary rule, that the best evidence in the power of the party must be given.   There appears therefore no error on this point.

2. The defendants *Harbert and Caldwell*, proposed to inquire of a witness, what was the consideration of the notes and judgments of the plaintiff, but the court overruled the evidence.   The issue directed by the court was, to try the right of *T. Bradford* to have and receive according to the amount of his liens, the moneys in court,—and it is added, that the defendants under the aforesaid issue, are to be entitled to the benefit of any question that may arise in relation to the lien of a judgment of revival, or under the original judgment.   The argument of the defendants now is, that under this agreement, they had a right to inquire into the validity of the judgments of *T. Bradford*, and to travel into the original cause of action on which they were founded.   If that was the intention of the defendants, it is by no means expressed in such language as to warrant the construction contended for.   The words of the agreement would seem only to justify an inquiry into the lien of the judgments, and not into the validity of the judgments by which the lien was created.   The object of the parties appears to have been, merely to try the right to the moneys in court under the judgments.   On general principles, a judgment is binding and conclusive until reversed or set aside by a legal proceeding.   It cannot be collaterally questioned by third persons, except on the ground of fraud and collusion in the procuring or entering it, which was not alleged here.   If the court below had so far a control over a judgment in their own court, as to have permitted subsequent judgment creditors to inquire into the original cause of action on which it was obtained, that permission should clearly appear to have been granted; otherwise the plaintiff would be taken by surprise.   But it is very questionable whether the court below could or would have authorized such an inquiry, where the judgments were obtained years before, in an adverse proceeding, and afterwards duly revived.

On the issue, however, the court below was right in refusing to admit the evidence.

3. But the main question in the cause was that contained in the exception to the charge of the court, and their answers to certain points proposed by the counsel for the defendants, *Harbert* and *Caldwell*, which may be summed up thus:—that the property having been sold under a mortgage to the American Fire Insurance Company given by *Robert Stiles*, the moneys arising therefrom could only be applied to pay judgment creditors. The court below charged the jury, that if the property, though held in the name of *Robert*, really belonged to *Thomas*, and the mortgage was made by *Robert* at his instance, and for his benefit, and it was so understood by all the parties, *Thomas* was the real mortgagor, and a judgment creditor of *Thomas* was entitled to the surplus proceeds in preference to a subsequent judgment creditor of *Robert*, who, at the time of his judgment, was acquainted with all the circumstances of the ownership of the property, and of its being held for the purpose of evading the prior judgment.

It is well settled in this state, that a judgment is a lien on the equitable estate of the debtor: and for want of a court of chancery, this equity is enforced by our courts wherever it can be accomplished in the ordinary modes of administering justice. *Thomas T. Stiles*, being in equity the sole owner, and the real mortgagor of the property, a judgment against him was a lien upon it as between the parties, and third persons lending their money, and taking a judgment against *Robert*, with full notice of this equitable interest, must be considered as affected by it as fully as *Robert* himself was, and cannot be permitted to allege either the land or its proceeds to be the property of *Robert*, against their own knowledge, and to the prejudice of a prior judgment creditor of *Thomas*. It is insisted, that the only remedy of such judgment creditor is, to give notice at the sheriff's sale of his claim, and to enforce it by another execution against the land. But under our system of sales of land by execution, he who has a prior lien on the land, (with the exception of mortgagees, who are within the provisions of the late act of assembly,) has a right to resort for the payment of his debts, to the fund raised by the sheriff's sale, and brought into court. The money stands in the place of the land. In the case of the *Commonwealth for the use of Gurney's Executors* v. *Alexander et al.* 14 *Serg. & Rawle*, 257, money came into the hands of the sheriff, under a sale of land belonging to *Maxwell*, on a judgment against *Maxwell*, but the land had been purchased by *Maxwell* from *Patton*, and while *Patton* owned it, *Gurney* had obtained a judgment against *Patton*, which continued a lien at the time of the sheriff's sale: and it was held, that the sheriff was bound to pay *Gurney's* judgment out of the the moneys in his hands, and he and his sureties were made responsible for not having done so. In that case, the same argument was used that is urged here—that nothing but the rights of *Maxwell*

(Stiles et al. *v.* Bradford.)

could be sold, and, therefore, no part of the proceeds of the sale could be applied to any other purpose than the discharge of judgments against *Maxwell*, and the surplus, if any, to be paid to *Maxwell* himself.   But, says TILGHMAN, C. J. delivering the opinion of the court, " What was the right of *Maxwell*?   He had a right to the fee simple, subject to all liens by virtue of judgments, either against himself or those under whom he claimed."   The right of *Robert Stiles* in the present case was no better.   In fact it would appear by the evidence, that he neither had nor pretended to have any right whatever in the property : he was a mere instrument to effect the purposes of *Thomas T. Stiles*, to whom the property belonged, who directed its various modifications, and whose character was known to all the parties dealing with them.   It would be unjust, if, under colour of being creditors of *Robert*, who had no claim whatever to the property, subsequent judgment creditors were to be preferred to prior judgment creditors of *Thomas*, who was its sole owner.   That could only take place when such creditors lent their money to *Robert* without notice : they would, in that case, stand in a different situation, and might claim in equity to hold discharged of a latent trust.

6. Another error assigned in the charge of the court is, on stating to the jury, that the election of the plaintiff, on the thirtieth of *September*, 1829, to look to the interest of *Thomas T. Stiles*, did not bind him or impair his right to recover.   It appears that at that time the sale took place under the execution issued by *Harbert* and *Caldwell*, on their judgment against *Robert Stiles*, of the leasehold property at *Gloucester* ferry, and *T. Bradford* gave notice at the sale, that his judgment was a lien on it as the property of *Thomas T. Stiles*.   It does not appear that any further steps were taken after this notice.   Correctly speaking, the judgment was not a lien on a leasehold interest, and if pursued would have been ineffectual.   For aught we know, this may have been the reason why the claim was abandoned.   At any rate, a mere notice of this kind, vesting no right, and incapable of yielding any satisfaction, cannot be considered as an election to resort to that source for payment, and to waive the right to a fund on which the plaintiff has a good claim, and which is available in payment of his debt.   The notice, therefore, would seem to be of no importance on this issue, and its bearing was rightly stated by the court below.

Errors were also assigned by Mrs. *Stephens*, a judgment creditor of *Robert Stiles*, who declined taking part in the issue below, that the court had no right to direct a feigned issue : and the same objection has been made on behalf of *Harbert* and *Caldwell*.   The ground on which this is placed is, that the money being raised by the sale of the estate of *Robert Stiles*, the court had no right to direct an issue at the instance of the creditors of *Thomas T. Stiles*.   On the principles, however, mentioned before, this is an incorrect mode of stating the case.   The creditors of *Thomas T. Stiles* had a claim on the fund,

and the powers of the court, under the act of assembly of *April,* 1827, were ample to extend to them relief in the shape of a feigned issue to settle doubtful points. We are of opinion that the judgment be affirmed.

Judgment affirmed.