HAYWARD *v.* BARRON.

As a general rule, where the deposition of a witness has been properly taken, to be used at the trial of an action, but at the time of trial the witness is in court and called to the stand, the deposition is excluded.

If, when called to the stand, the witness declines to testify, on the ground that he cannot do so without criminating himself, and is thereupon excused from testifying, the deposition is not thereby rendered admissible.

ASSUMPSIT, for goods, wares and merchandise, sold and delivered, brought to recover a balance of $522.13, due the plaintiffs for groceries sold and delivered by them to one Charles G. Parsons, late of Manchester, deceased, but alleged to have been actually purchased for the benefit and use of a firm in which the defendants were partners with said Parsons. Hadley was defaulted.

After proving the sale and delivery of the goods, the price of which was claimed to be recovered in this action, to Parsons, at the dates mentioned in the specification filed in the case, the plaintiffs offered the deposition of one Emily D. Rogers, the widow of Charles G. Parsons, and sister of Sidney B. Hadley. The defendants objected to its being read, giving notice to the plaintiffs that the witness was then present in court. The plaintiffs thereupon called Mrs. Rogers to the stand, who, after being sworn and testifying to her relationship to Parsons and Hadley, declined answering further interrogatories proposed to her, on the ground that she could not do so without criminating herself. She was therefore excused from testifying further. The interrogatories proposed to her were substantially the same as those put to and answered by her in the deposition offered. It appeared that the present residence of Mrs. Rogers was in Manchester, more than ten miles from the place of trial.

The plaintiffs then offered again the deposition of the witness, but the court declined to admit it, and the plaintiffs excepted. Thereupon a verdict was taken, by consent,

for the defendants, subject to the opinion of the whole court as to the admissibility of said deposition under the circumstances stated.

*W. C. & S. G. Clarke,* for the plaintiffs.

*Cross & Topliff,* for the defendants.

FOWLER, J. At common law it was the right of parties in civil causes, as it still is in criminal cases in this State, to have all witnesses produced and examined *viva voce,* before the jury, and courts of 'law had no authority to authorize depositions to be taken *de bene esse,* to be used in trials before themselves. If the personal attendance of witnesses could not be procured, the court might in effect compel the opposite party to consent to have them examined upon interrogatories, or under a commission, by deferring the trial from term to term until such consent was obtained. This was, however, a matter of discretion in the court, and the only right of the party needing the testimony of witnesses whose presence in court could not be procured, was to resort to a court of equity for relief, and by a suit therein, auxiliary to the action at law, obtain the desired evidence. It was not until the thirteenth year of the reign of George III. that the inconvenience of this mode of practice was remedied in England by statute, and even this only applied to cases where the cause of action arose in India, in which cases the courts of law were empowered to issue a commission to examine witnesses upon the spot, and transmit their depositions to England. It was subsequently so amended as to apply to all cases wherein the personal attendance of witnesses could not be procured. 3 Black. Com. 383 ; 1 Greenl. Ev., sec. 320 ; 2 Tidd's Pr. 770, 810 ; 1 Cowen & Hill's Notes to Phillipps' Ev. 33–41 ; *Furley* v. *Newman,* Doug. 419 ; *Mostyn* v. *Fabrigas,* Cowper 174 ; *Calliand* v. *Vaughan,* 1 B. & P. 210 ; *Frye* v. *Barker,* 2 Pick. 65 ; *Russell* v. *Fabyan,* 35 N. H. 160.

It has been suggested that perhaps our Superior Court has always possessed the power of examining absent witnesses through a commission, by virtue of the provisions of the statute first organizing it, whereby it was vested with chancery powers as well as those incident to courts of law. *Russell* v. *Fabyan*, 35 N. H. 162. But it was always attended with considerable difficulty and expense, and more or less of delay—as well as the risk of the entire loss of the testimony of such witnesses as were bound to sea, were old and infirm or sick—to obtain testimony by means of a commission issuing from the court in which an action was pending, as such commission could only issue after the entry of the action in court, upon application therefor and proof of circumstances authorizing its issue. Accordingly, in the thirteenth year of the reign of William III. [1701], "An act for taking affidavits out of court," was passed by the Provincial Assembly of New-Hampshire, by which, after a preamble in these words— "Forasmuch as it is often necessary that witnesses in civil causes be sworn out of court, when, by reason of their going to sea, living more than twenty miles distance from the place where the cause is to be tried, age, sickness, or other bodily infirmity, they are rendered incapable of travel and appearing in person at court, to the intent, therefore, that all witnesses may indifferently testify their certain knowledge and the whole truth in the cause they are to speak unto"—any justice of the peace, or other person lawfully commissioned or empowered thereto by two or more justices of the superior or inferior courts respectively, is authorized to take depositions to be used in court, for any of the reasons set forth in the preamble, and not otherwise; seasonable notice being given to the adverse party, if living within twenty miles of the place of taking, &c. Province Laws (Ed. 1761,) 11. In the revision of this act by the State Legislature, on the 9th of February, 1791, a residence of more than ten miles from the place of trial was made

one of the causes for taking a deposition. N. H. Laws (Ed. 1805,) 100. By the act of June 17, 1802, notaries public were authorized to take and certify depositions the same as justices of the peace. N. H. Laws (1805,) 97. These acts were modified and amended, in some of their provisions, by the acts of June 18, 1807, and June 29, 1819, so that, upon the revision of the laws in 1828, it was provided that the depositions of witnesses in civil causes, who were bound to sea, who were old and infirm, who were sick and unable to appear at court, or who lived out of the State, or more than ten miles from the place of trial, might be taken by the parties before a magistrate upon their own motion, after due notice, as prescribed. Act of December 31, 1828; Laws of 1830, 505. By the act of June 24, 1839, the provisions of the last act were extended to witnesses about to leave the State, and not to return before the time of trial. These two acts were embodied in the Revised Statutes of 1842, (Rev. Stat., ch. 188, sec. 13,) with some modifications as to the magistrates and notices, and thereafter the law remained unchanged until the passage of the act of December 26, 1848, which provided " That the deposition of any witness in a civil cause may be taken and may be used upon the trial, if at the time of trial the witness has deceased, is insane, is old and infirm, is sick or unable to attend court, or lives out of the State or more than ten miles from the place of trial." Laws of November session, 1848, ch. 704; Comp. Laws 485.

We have thus adverted to the origin and history of legislation on the subject of depositions, in order to show more clearly than could otherwise readily have been done, that the principal object and purpose thereof has been to dispense with the common law rule limiting the testimony to be received on trial to that delivered orally upon the stand in the presence of the court and jury, and to guard against the casualties of death, sickness, infirmity, old

age, insanity, absence from the State or at sea, or other inability to attend court at the time of trial. An incidental object has undoubtedly been to relieve parties from the inconvenience and expense attending the personal attendance of witnesses from a great distance, but the whole series of legislation has always proceeded upon the ground that the *viva voce* testimony of witnesses before the jury was the original right of parties and the requirement of the law, and that depositions were only taken *de bene esse*, as a convenient substitute therefor, in many respects less desirable than oral testimony, and never to be used if the witness were produced in court at the trial by the opposite party. 1 Greenl. Ev., secs. 320–323; *Winooskie Turnpike Company* v. *Gridley*, 8 Vt. 404; *Farnsworth* v. *Chase*, 19 N. H. 534.

Hence, when depositions have been taken under the provisions of any statute, it has always been holden that the statute requisitions must be strictly complied with, as well in respect to the notice and the caption, and the mode and manner of taking them, as the use of the depositions on trial. *Ela* v. *Rand*, 4 N. H. 54; *Shepherd* v. *Thompson*, 5 N. H. 95; same case, 4 N. H. 213; *Bean* v. *Quimby*, 5 N. H. 94; *Whicher* v. *Whicher*, 11 N. H. 348; *Clement* v. *Hadlock*, 13 N. H. 183; *Bartlett* v. *Trefethen*, 14 N. H. 427; *Fabyan* v. *Adams*, 15 N. H. 371; *Clough* v. *Bowman*, 15 N. H. 504; *Knight* v. *Coleman*, 19 N. H. 118; *Farnsworth* v. *Chase*, 19 N. H. 534; *Burnham* v. *Porter*, 24 N. H. (4 Fost.) 570; *Smith* v. *Nashua & Lowell Railroad*, 27 N. H. (7 Fost.) 100; *Cater* v. *M'Daniel*, 21 N. H. (1 Fost.) 231; *Powers* v. *Shepherd*, 21 N. H. (1 Fost.) 60; *Carleton* v. *Patterson*, 29 N. H. (9 Fost.) 580; *Currier* v. *Railroad*, 31 N. H. (11 Fost.) 209.

Hence, too, the uniform practice of our courts, as we understand it, has been, as stated by Chief Justice *Parker*, in *Clough* v. *Bowman*, 15 N. H. 515, that where the deposition of a witness has been properly taken to be used at

Hayward *v.* Barron.

the trial but at the time of the trial the witness is in court and called to the stand, to exclude the deposition. This rule is of course subject to the condition that the witness when called to the stand is mentally and physically capable of testifying.

The practice in some of the States would seem to be in accordance with our own; *Doe* ex dem. *Sargent* v. *Adams,* 1 Tyler 197; *Stiles* v. *Bradford,* 4 Rawle 394; while in others a different rule prevails. *Phenix* v. *Baldwin,* 14 Wend. 62; *Frink* v. *Potter,* 17 Ill. 406.

While the rule of law, excusing a witness from testifying when he cannot do so without criminating himself, is designed for his protection and not for the benefit of either party, as the counsel for the plaintiffs have well suggested, it is equally true that neither is to suffer or be deprived of his legal rights by the misfortune of his opponent. If, as we have endeavored to show, the rule of law and practice is well and rightly settled in this State, that a deposition, though properly taken, cannot be used if the witness be present in court and not mentally or physically incapacitated to testify, it is the misfortune of the party desiring his testimony, that when called to the stand he is excused from testifying because he cannot do so without criminating himself. This does not change the rule of law, or deprive the other party of his legal right to have the testimony of the witness given in upon the stand, or not at all. Besides, it is deserving of consideration what could be the extent of that misfortune, and how much weight the jury would be likely to give to the deposition of a witness, who testifies before them, as did substantially the witness in the case before us, that she cannot answer truly in relation to its contents orally upon the stand, without subjecting herself to a criminal prosecution.

As we are of opinion that the deposition of Mrs. Rogers, under the circumstances in which it was offered, was properly rejected by the court below, there must be

*Judgment upon the verdict.*