Coos,
No. 4908.

Isaac Angelowitz *v.* Robert J. Nolet.

Argued May 2, 1961.

Decided June 30, 1961.

*Russell H. McGuirk* and *Robert Shaw* (*Mr. McGuirk* orally), for the plaintiff.

*John E. Gormley* (by brief and orally), for the defendant.

BLANDIN, J. The plaintiff contends that the Court erred in admitting the deposition of the defendant, since the latter was in court and testified at the trial. RSA 517:1, upon which the plaintiff mistakenly relies, relates to the depositions of witnesses, but section 11 of the same chapter, dealing with parties and which applies here, states that a party's deposition may be used at the trial "unless the deponent is in attendance."

Although it is true ordinarily that this defendant's deposition would not have been admissible since he was in court (*Hayward* v. *Barron,* 38 N. H. 366), it could have been used either to contradict him (*Precourt* v. *Driscoll,* 85 N. H. 280, 281) or to clarify or explain his answers. *Robinson* v. *Company,* 79 N. H. 398; *Cote* v. *Company,* 86 N. H. 238.

In the present case the defendant was asked by plaintiff's counsel at the trial: "As a matter of fact, isn't it true when you came into the driveway of the house where Mr. Angelowitz lives you didn't stop easy but you skidded to a stop?" To this the defendant replied "No." He was then confronted with his deposition, and the following interchange took place between him and the plaintiff's counsel: "Q. Do you remember reading these questions, page 10, questions 91 and 92? 91. 'Do you remember Mr. Angelowitz going forward in the car?' Answer, 'After I stopped I noticed Mr. Angelowitz coming forward on the front seat.' 92. 'How far forward did he go?' Answer, 'When I had stopped skidding he stopped. He just leaned over with the front seat.' A. That is wrong. I never used that word. Q. You say you didn't give those answers? A. Not those; that answer. Q. But you did see Mr. Angelowitz coming forward in the car? He was thrown forward, isn't that right, when you came to a stop? A. He was leaning forward when I came to a stop, on the front seat."

Counsel for the defendant later sought to introduce other portions of the deposition to show that there was no other reference to skidding and that the answer was inconsistent with the whole tenor of the deposition, in order to demonstrate that the defendant never made the statement. The Court sustained the plaintiff's exception to this procedure.

Thereafter the stenographer who took the deposition was called as a witness by the plaintiff. She testified that she was not a professional court reporter, that her notes taken at the deposition

were not completely transcribed until two months after the deposition was taken, but though she might have made a mistake, yet her notes showed she had correctly transcribed the defendant's answer. Defendant's counsel, through the stenographer, again offered to introduce various other questions and answers from the deposition to show that the reference to skidding was erroneous. The Court upheld the plaintiff's objection to this, but then directed the defendant's counsel to have the deposition marked "and then you can read any and all of it and then make your argument to the jury." To this the plaintiff excepted. It would have been proper to have permitted defendant's counsel to read to the jury or to introduce in evidence as an exhibit such portions of the deposition as tended to show that his client did not make the disputed answer with reference to skidding. *Robinson* v. *Company*, 79 N. H. 398, 400; *Williams* v. *Company*, 87 N. H. 430, 433.

An examination of the deposition discloses that a substantial portion of it may fairly be said to bear on the vital issue of whether the defendant did state that "when I had stopped skidding he stopped." Such parts, therefore, were properly before the jury. *Robinson* v. *Company*, supra. Other portions merely reaffirmed minor undisputed details such as dates, times and locations or restated testimony previously received at the trial without objection. They were therefore harmless. *Clapp Company* v. *McCleary*, 89 N. H. 65, 66; *Harmon* v. *Kennett Company*, 103 N. H. 219.

In summary, it appears that much of the deposition was competent upon the issue for which it was offered. It was therefore the duty of the plaintiff, in order to properly preserve his exception to request a limitation on its use. *Welch* v. *Coleman*, 95 N. H. 399, 404. Finally, we find that no prejudicial matter is disclosed in such parts as may be deemed irrelevant. It follows that the plaintiff was not harmed, and his exception to the admission of this evidence is overruled. *Johnson* v. *Shaw*, 101 N. H. 182, 187.

The motion for a mistrial is grounded on defendant's counsel's argument wherein he spoke of insurance. It is true as a general rule that the unnecessary mention of insurance is reversible error. *Piechuck* v. *Magusiak*, 82 N. H. 429. However, the interjection of insurance does not render a trial unfair in any and all circumstances as a matter of law. *Dimarco* v. *Smith*, 90 N. H. 378. In the last analysis, the facts of each case determine whether undue prejudice has resulted (*Menard* v. *Cashman*, 93 N. H. 273, 275), although the question whether the Trial Court's determination is supported

by the record is for this court. *Wilson* v. *Bank*, 95 N. H. 113, 117.

In the present case it appears the Presiding Justice, in his preliminary general instructions to the panel from which this jury was chosen, told them in effect that they should not guess at whether a party was insured; that the fact was wholly immaterial; and that if they ignored the evidence in a case and awarded a verdict merely because they believed an insurance company would have to pay it, they might be penalizing an innocent uninsured defendant; and furthermore they would be taking money out of their own pockets because such verdicts would result in higher insurance rates.

The defendant here testified without objection that the plaintiff asked him if he were insured, and upon receiving an affirmative answer, requested the defendant to tell his insurance company that he did make an abrupt stop so that the plaintiff could collect damages. In addressing the jury on this matter, the defendant argued as follows: "We don't come here — Mr. Nolet, his insurance company and myself, we are not here to look for any favors. All we ask of you is a good, fair, impartial verdict on the evidence; a good, square deal in the American way to Mr. Nolet, the insurance company and to me, and to yourself by the way. Of course you and I know you are honorable, just men, and you will do what is right, and being that kind of men, you are not going to reward somebody for a fictitious claim, and that is what is going to happen if you give a verdict to the plaintiff here. You are going to say, you made it up good; we are going to reward you, and if you do you are doing what the Court said the other day — don't pay any attention to insurance. That is not the issue. Whether it gets into the case voluntarily or by some accident, don't pay any attention to it, because if you can give verdicts on that basis you are taking it out of your own pocket, and that is what Judge Leahy said to you."

Upon objection by the plaintiff, there was discussion between counsel and the Bench, during which the defendant's attorney asked the Court to instruct the jury to disregard his argument. The Court, after denying the plaintiff's motion for a mistrial, instructed the jury as follows:

"Gentlemen, the Court in its preliminary instructions to you as a body discussed insurance and asked you to disregard insurance in any case and not to guess. I wasn't talking about a case where insurance is deliberately injected in it. I was talking about situa-

tions where nothing was said about insurance and you go in your room and guess there is or is not insurance and you render a verdict based on whether or not there was insurance. I told you there were many reasons for not doing that, including the fact you might guess there was insurance when there wasn't and take an innocent man and take it out of his pocket and so forth. I also said if you were giving verdicts just because there was insurance it would raise the insurance rates. I probably went too far with you. I didn't mean to open up doors so that a party could admit insurance and increase your own rates. If there is liability that doesn't have anything to do with it. Mr. Gormley made that statement to you. I want you to disregard it entirely in coming to your verdict and decide the case on the merits and not whether or not there is insurance existing. I will discuss why that was injected into the case in my instructions to you."

In his charge, the Presiding Justice reiterated this instruction and said to the jury: "Disregard what counsel said so far as affecting the insurance rates, because that has nothing to do with this case at all, and as I told you at the beginning, it is because you wouldn't guess at the existence of insurance. But now that you know there is insurance here you should return your verdict regardless of the fact the insurance company has to pay it. That is what they are for. But the fact of insurance alone should not be any reason for bringing in a verdict. I want you to understand that clearly. It was injected, and it should be so treated — it was injected as the Court understands it because it is the claim of the defense that is one of the big reasons this case is in this court, because Mr. Nolet is insured, and that is the main reason for it being here. Disregard the other aspect of it." It was thus promptly, clearly and forcibly impressed upon the jury by the Court on two occasions that they were to disregard completely defendant's counsel's remarks relative to insurance. By the denial of the motion for a mistrial, the Court found that there was no undue prejudice and that the plaintiff had a fair trial. *Richards* v. *Company*, 96 N. H. 272, 278.

The Presiding Justice's final considered conclusion to this effect rather than the remarks he made in the course of reaching it, and upon which the plaintiff relies to show that the trial was rendered unfair, are decisive. See *Arsenault* v. *Lepage*, 84 N. H. 497. In all the circumstances we cannot hold as a matter of law that if any prejudice was improperly injected into the minds of the jury by the

defendant's argument it was incurable or that the Court's implicit finding that the trial was not rendered unfair by counsel's statement was clearly erroneous. It follows that the plaintiff's exception to the denial of his motion for a mistrial must therefore be overruled. *Sirois* v. *Laquerre*, 103 N. H. 113. The order is

*Judgment on the verdict.*

All concurred.