Strafford
No. 81-306

CALEDONIA, INC.

v.

WILLIAM TRAINOR

March 24, 1983

118

*Brown & Nixon P.A.*, of Manchester (*Michael P. Hall* and *Kenneth C. Brown* on the brief, and *Mr. Hall* orally), for the plaintiff.

*Anthony A. McManus*, of Dover, by brief and orally, for the defendant.

PER CURIAM. The defendant appeals from a decision of the Superior Court (*Souter*, J.) approving the recommendation of a Master (*Griffith*, J., Ret.) that a verdict be entered against the defendant for fraud in connection with the sale of certain construction equipment. He raises a series of issues regarding the admissibility of a deposition and the lack of proper authentication of documents, as well as the issue of whether there was sufficient evidence to support the master's finding of fraud. We affirm.

In February 1977, the plaintiff, Caledonia, Inc., a Vermont corporation engaged in road construction, decided to sell some of its equipment because of a slump in the road-building business. Richard Graham, the treasurer of the plaintiff corporation, was introduced to William Wood, an equipment dealer from Beverly, Massachusetts. In March 1977, Wood agreed to purchase two used bulldozers and a traxcavator, which is a bulldozer with a bucket instead of a blade, for $110,000. At the same time, Wood learned

that the plaintiff also had some used rock-crushing equipment for sale. Wood made a deposit of $5,000 by check toward the purchase of the two bulldozers and the traxcavator. Wood asked the defendant, William Trainor, a business associate, to provide the balance of $105,000 to purchase the three pieces of construction equipment. Wood also told the defendant at this time that the rock-crushing equipment was for sale, and the defendant indicated he could probably find a buyer.

On April 14, 1977, the defendant and Graham, to whom the defendant had been introduced by Wood, signed an agreement for the sale of the rock-crushing equipment for $200,000 to Northgate Developers, Inc., of Rochester, New Hampshire, of which the defendant was the controlling shareholder. Four days later, Wood and the defendant delivered to Graham an additional $10,000 in cash and a $20,000 check, which they requested to be applied toward the purchase of the rock crusher instead of the other three pieces of construction equipment.

On April 19, 1977, the defendant delivered to the plaintiff corporation another $20,000, and was accompanied by Raymond Slattery, a Canadian resident, who endorsed a check for $113,000 to the plaintiff. Graham testified that the defendant had described Slattery as a financial backer for the purpose of the immediate transaction involving the rock crusher.

The next day, the plaintiff received an additional $5,000 in cash and a $32,000 personal check from the defendant, with instructions to hold the check until he advised Graham that he had deposited money to cover it. These funds represented the balance of the purchase price for the rock crusher. Graham then signed and delivered to the defendant a bill of sale which the defendant had prepared, selling the rock crusher to Tractors and Equipment, Ltd., a Canadian corporation controlled by Slattery, for $226,153.06. Graham testified that he considered the defendant to be the immediate buyer, although he understood that Tractors and Equipment, Ltd., would be the ultimate purchaser.

Graham also testified that the additional $26,153.06 represented the amount necessary to pay the expenses of transporting the rock-crushing equipment to Canada and through customs, and a six-percent commission to the defendant for negotiating the sale. Graham gave the defendant a receipt for $26,153.06 in excess of the purchase price. The phrase "subject to clearance of funds," a reference to the defendant's $32,000 personal check, was inserted into the bill of sale. At this time, the plaintiff apparently had received $205,000, including the $32,000 personal check from the defendant.

This was $5,000 more than the $200,000 purchase price of the rock crusher.

During the next few days, the rock-crushing equipment was transported from the plaintiff's headquarters in Waterford, Vermont, to Houlton, Maine, on the Canadian border. It was to be held there until the defendant had received funds to cover his $32,000 personal check, before being released for transport to the Canadian customs depot in St. John, New Brunswick, Canada, and ultimately to Slattery's place of business.

In early May, William Wood's office notified the plaintiff that funds were available and that the defendant's $32,000 check could be deposited. Nonetheless, on May 17, 1977, the check was returned for insufficient funds. Thereafter, the defendant contacted Graham to say that Tractors and Equipment, Ltd., was cancelling the purchase of the rock-crushing equipment because of certain missing parts and other inconsistencies with the bill of sale. The defendant returned the bill of sale to the plaintiff and received, on behalf of William Wood, a sixty-day exclusive agency to sell the rock-crushing equipment. During this sixty-day period, Graham understood that the rock crusher would remain in Houlton, Maine.

The defendant also instructed the plaintiff to apply the money it had received for the rock crusher, including $50,000 of the $113,000 check from Raymond Slattery, toward the $110,000 purchase price of the two bulldozers and the traxcavator, leaving the plaintiff with a balance of $63,000 to be applied toward the rock crusher. Pursuant to the defendant's directions, the plaintiff executed bills of sale for the two bulldozers and the traxcavator to Wood Equipment Co., which was controlled by William Wood. The three pieces of equipment were delivered to Wood's place of business in Salem, Massachusetts. Wood subsequently conveyed the traxcavator to the defendant, in return for certain personal property and for the defendant's efforts in negotiating on his behalf with the plaintiff.

After the sixty-day exclusive agency period had expired without the sale of the rock crusher, the plaintiff attempted to have the crusher returned to its headquarters in Vermont from Houlton, Maine, where it believed the crusher was being stored. The plaintiff then discovered that the equipment had been moved from Houlton, Maine, to the customs depot in St. John, New Brunswick, Canada, and removed from there in late August 1977 by Slattery, who had produced a bill of sale and information showing the purchase price of the rock crusher to be $113,000. When Slattery refused to return the equipment, the plaintiff brought suit in Canada against Slattery's corporation, Tractors and Equipment, Ltd.

The plaintiff also initiated this action in New Hampshire for fraud and conspiracy against the defendant, the defendant's corporation Northgate Developers, Inc., William Wood, and Melvin Clark, a notary public who notarized a bill of sale allegedly forged by the defendant and used by Slattery to obtain possession of the rock crusher from Canadian customs officials. After a trial, the master found that the defendant had engaged in fraud and forgery, which resulted in the plaintiff's loss of the rock-crushing equipment. The master recommended a verdict in favor of the plaintiff in the amount of $137,000, the difference between the $200,000 negotiated sale price of the crusher and the $63,000 balance of funds received by the plaintiff that remained after the sale of the two bulldozers and the traxcavator. The defendant appealed the superior court's approval of the master's recommendations, challenging the admission of certain evidence and the sufficiency of the evidence.

The defendant argues that the master erroneously admitted his pretrial deposition into evidence after he took the witness stand at trial and invoked the privilege against self-incrimination. He relies upon the language of RSA 517:11, which permits the deposition of a party to be admitted into evidence at trial, "unless the deponent is in attendance." The defendant contends that because he was in attendance at the trial, although he declined to testify, the deposition may not be admitted. We refuse to read the statutory language in such a manner.

Depositions are within the class of "secondary evidence" known as hearsay. *Taylor v. Thomas*, 77 N.H. 410, 412, 92 A. 740, 741 (1914) (citation omitted). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. *See* FED. R. EVID. 801(c). The admissibility of a deponent's testimony is determined by the same standard applied to all proffered hearsay evidence: "There must be a greater or less[er] degree of necessity for the admission of the evidence, and the circumstances must be such as to guarantee that the statements are fairly trustworthy." *Roberts v. Company*, 78 N.H. 491, 494, 102 A. 537, 538 (1917).

The defendant's deposition testimony satisfied both of these elements. First, his refusal to testify based upon his privilege against self-incrimination necessitated the admission of the defendant's testimony at deposition. The defendant's assertion that his physical presence at trial, notwithstanding his refusal to testify, required the exclusion of his deposition, misconstrues precedent that deposition testimony is inadmissible when the deponent is present in court and *testifies. Cote v. Company*, 86 N.H. 238, 241, 166 A. 279, 281 (1933) (emphasis added).

■■ To determine whether a deposition is admissible based on necessity, "[t]he test is whether the testimony of the actor can be compelled by process of the court." *Roberts v. Company*, 78 N.H. at 495, 102 A. at 539. Where a party asserts his right against self-incrimination, the court cannot compel him to testify. Second, the circumstances of the defendant's deposition testimony, given under oath and subject to examination by counsel for both parties, ensured that it was trustworthy.

The defendant's reliance upon *Hayward v. Barron*, 38 N.H. 366, 371 (1859), for the proposition that a witness' refusal to testify at trial, based upon the privilege against self-incrimination, does not render his deposition admissible, is misplaced. The holding in *Hayward* was based upon this court's strict interpretation of a statute governing the use of depositions at trial that was significantly narrower in scope than any statutory authority now in effect. Furthermore, *Hayward* involved the deposition testimony of a non-party witness, unlike the defendant deponent in the instant case, and implicated the provisions of a forerunner to RSA 517:1, a statutory provision raising different considerations than RSA 517:11. *See Angelowitz v. Nolet*, 103 N.H. 347, 348, 172 A.2d 103, 104 (1961). We decline at this time to address the question of the continuing viability of *Hayward* until the issue is squarely before us.

■ The admission of the defendant's deposition in the circumstances of this case is in accord with the decisions of other courts. *See, e.g., Phillips v. Wyrick*, 558 F.2d 489, 494 (8th Cir. 1977), *cert. denied*, 434 U.S. 1088 (1978); *State v. Yates*, 442 S.W.2d 21, 28 (Mo. 1969); *see also* FED. R. EVID. 804(a)(1); McCORMICK'S HANDBOOK ON THE LAW OF EVIDENCE ch. 24, § 253(6), at 612 (2d ed. 1972). Accordingly, we hold that the master properly admitted the defendant's deposition into evidence after he invoked the privilege against self-incrimination and refused to testify at trial.

The defendant next challenges the admissibility of the so-called Whitney bill of sale. This document, which provided the foundation for the master's finding of fraud and forgery by the defendant, purported to be a bill of sale of the rock-crushing equipment for $113,000 to Tractors and Equipment, Ltd., by one John Whitney of Rochester, New Hampshire. The defendant argues that a proper foundation was never laid for the admission of the Whitney bill of sale because the document was never authenticated or identified.

This assertion ignores the extensive testimony of a handwriting expert whose qualifications as an expert witness the defendant did not question. The expert testified that, after comparing the signature of John Whitney on the Whitney bill of sale with authenticated

samples of the defendant's handwriting, she concluded that it was "highly probable" and there was a "very strong probability" that the defendant signed the bill of sale purporting to sell the rock crusher to Tractors and Equipment, Ltd., for $113,000. *See University of Illinois v. Spalding,* 71 N.H. 163, 169, 51 A. 731, 733 (1901); *State v. Shinborn,* 46 N.H. 497, 502 (1866); *see also* FED. R. EVID. 901(b)(3).

■ The foundation for the admission of the Whitney bill of sale was further established by the defendant's testimony without objection at his deposition that Canadian customs officials had told him that Slattery, the controlling shareholder in Tractors and Equipment, Ltd., had presented a bill of sale in order to obtain possession of the rock crusher from them, and that Slattery had presented evidence that he had paid $113,000 for that equipment.

■ Although the defendant contends that the admission of a copy of the Whitney bill of sale, rather than the original, was improper, we hold that the admission of a duplicate of the original bill of sale was proper for the purpose for which it was being introduced. While the "best evidence" rule generally requires production of the original where the *content* of the document is at issue, MCCORMICK, *supra* ch. 23, § 230, at 560, the Whitney bill of sale was introduced merely to show that such a document *existed,* in order to prove the defendant's fraud and forgery in regard to the purchase of the rock crusher from the plaintiff. *Id.* § 233, at 563.

The defendant also challenged the admission into evidence of the so-called Clark bill of sale, which purportedly represented the sale of the rock-crushing equipment to Raymond Slattery for $226,153.06. This bill of sale on its face purported to be a conveyance of the rock crusher by Northgate Developers, Inc., and was signed "John E. Clark, President." The defendant claims that the Clark bill of sale, like the Whitney bill of sale, was improperly admitted into evidence without having been identified or authenticated.

■ Whatever improper foundation may have been laid for the admission of the Clark bill of sale was cured when the plaintiff's handwriting expert testified that it was "highly probable" that the defendant had signed the name "John E. Clark" on this document. In his deposition, the defendant had testified that John E. Clark was once an employee of Northgate Developers, Inc., but had never occupied the office of corporate president, in which capacity the Clark bill of sale had been executed. In his deposition testimony, the defendant also acknowledged having seen the Clark bill of sale previously, and stated that he did not use it to transfer ownership because the sale of the rock-crushing equipment was supposed to be

directly from the plaintiff to Tractors and Equipment, Ltd., or to Slattery. We hold that the foregoing evidence constituted a proper identification of the Clark bill of sale for its admission into evidence.

■■ The defendant contends that insufficient evidence existed to support the master's findings of facts and conclusions of law that the defendant was guilty of fraud and forgery. In order to prove deceit, the plaintiff must prove that the defendant intentionally made material false statements to the plaintiff, which the defendant knew to be false or which he had no knowledge or belief were true, for the purpose of causing, and which does cause, the plaintiff reasonably to rely to his detriment. *Hall v. Insurance Co.*, 91 N.H. 6, 10–11, 13 A.2d 157, 160 (1940); *Connelly v. Brown*, 73 N.H. 193, 194, 60 A. 750, 751 (1905). Fraud must be proved by clear and convincing evidence, but such proof may be founded upon circumstantial evidence. *Burroughs v. Wynn*, 117 N.H. 123, 125, 370 A.2d 642, 643 (1977); *Lampesis v. Comolli*, 101 N.H. 279, 283, 140 A.2d 561, 564 (1958).

The evidence clearly supported the master's finding that the defendant executed the Whitney bill of sale. The handwriting expert testified that the defendant executed the Whitney bill of sale, and the description of the rock-crushing equipment and other language in the Whitney bill of sale is the same as that in the original $226,000 bill of sale executed by the plaintiff and delivered to the defendant. It is also similar to the language in the Clark bill of sale, to which the defendant was connected by the handwriting expert's testimony and the defendant's own deposition testimony. Finally, as the defendant testified in his deposition, it would have been "unlikely" that someone who had not seen the Caledonia-Tractors and Equipment, Ltd. bill of sale, and the forged Clark bill of sale, could have come up with the same language in the Whitney bill of sale.

Although the forged signature on the Whitney bill of sale did not constitute a *direct* false and material representation to the *plaintiff*, it played a pivotal role in the defendant's representations to the plaintiff. For instance, in his deposition the defendant testified that Slattery wanted to have a bill of sale for the rock-crushing equipment before he gave any money as payment. This testimony explained the $113,000 purchase price in the forged Whitney bill of sale, compared with the $113,000 check that Slattery gave to Graham. Moreover, the fact that the Caledonia-Tractors and Equipment, Ltd. bill of sale was "subject to clearance of funds" was inconsistent with the defendant's foregoing deposition testimony.

Critical to the disposition of this case is the master's finding of

fact that Slattery "claimed title [to the rock-crushing equipment] by reason of a bill of sale dated April 15, 1977 by one John Whitney of Rochester, New Hampshire to Tractors and Equipment, Ltd., a corporation controlled by Mr. Slattery." There was ample evidence to support this finding. In his deposition, the defendant himself stated that Canadian customs officials had told him that Slattery presented a bill of sale as evidence of ownership, and that he presented information that he had paid $113,000 for the rock crusher. No objection regarding the competency of this testimony was raised. This was circumstantial evidence that the Whitney bill of sale was used by Slattery to obtain possession of the rock-crushing equipment, which resulted in the plaintiff's loss.

The Whitney bill of sale would have facilitated the defendant's representations to Graham and the plaintiff corporation that Slattery, although known to be the ultimate purchaser of the rock crusher, was merely a financial backer for the purpose of the transaction between the plaintiff and the defendant. This representation would have appeared consistent to the plaintiff when the defendant not only returned the $226,000 bill of sale to the plaintiff in mid-May, thus suggesting to Graham that Slattery would assert no ownership claim to the rock crusher, but also when the defendant directed the plaintiff to apply part of Slattery's $113,000 check to the two bulldozers and traxcavator instead of to the rock-crushing equipment.

Such representations could be found to have led the plaintiff not to secure possession of the rock-crushing equipment after Slattery supposedly rescinded the sale. Moreover, it could be found that the defendant contributed to the plaintiff's feeling of security in regard to the safe-keeping of the equipment when the defendant must have known that Slattery's interests were already contrary to those of the plaintiff, and when he further falsely represented to the plaintiff that no one had yet purchased the rock crusher and that he would attempt to locate a purchaser within an additional sixty days. Based on the evidence before him, the master could have concluded that the defendant represented, or allowed the plaintiff reasonably to believe, that the rock-crushing equipment was still in Houlton, Maine, or would remain there during the exclusive-agency period.

██ Our review of the record indicates that the master had a reasonable basis for finding that the defendant had engaged in fraud, to the plaintiff's detriment in the amount of $137,000. *See Hynes v. Whitehouse*, 120 N.H. 417, 421, 415 A.2d 876, 878 (1980); *Merchants National Bank of Manchester v. Town of Exeter*, 120 N.H. 157, 160, 412 A.2d 1016, 1017 (1980).

The defendant's final argument is that the plaintiff was under a duty to mitigate its damages by accepting an offer made by Slattery for the defendant to repurchase the rock crusher for $113,000. Because the money originally paid to the plaintiff for the rock-crushing equipment was applied instead, at the defendant's own directions, toward the purchase of the two bulldozers and the traxcavator, under the circumstances the plaintiff was under no duty to repurchase the rock crusher from Slattery for $113,000. The record in this case shows that the defendant intentionally misled the plaintiff to its detriment, and that the plaintiff acted reasonably and in good faith in attempting to minimize its loss. *See Emery v. Caledonia Sand and Gravel Co.*, 117 N.H. 441, 448, 374 A.2d 929, 934 (1977); *see also* RESTATEMENT (SECOND) OF TORTS § 918(2); 22 AM. JUR. 2d *Damages* § 32, at 53–54 (1965). The plaintiff was therefore entitled to recover the full $137,000 verdict in its favor.

*Affirmed.*

KING, C.J., did not sit.