ATHR, Inc. v. Nolt                    CV-97-191-JD  12/08/98
                    UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


ATHR, Inc.

        v.                              Civil No. 97-191-JD

Gregg A. Nolt, et al.


                            O R D E R


        The plaintiff, ATHR, Inc. ("ATHR"), brings this action

against the defendants, Gregg Nolt, Karen Nolt, Nolt & Associates

Inc., N-Tech Sales Inc. ("N-Tech"), and Felker Brothers Corp.

("Felker"), asserting state law claims of fraud, intentional

interference with contractual relations, civil conspiracy, and

promissory estoppel.[1]  Before the court now are the defendants'

motions for summary judgment (documents no. 42 and 43).


                           Background

        From approximately 1960 through 1990, ATHR or its

predecessor corporation, Hutchinson, Smith & Associates, Inc.,

served as the sales representative for Felker in a region known

as Territory 25.  Beginning in 1986 and continuing until 1990,

_____

        [1]The court notes that one defendant, K-Tech Inc., has been
voluntarily dismissed without prejudice, and N-Tech has
defaulted.  See ATHR Inc. v. Gregg Nolt, et al., No. 97-191-JD,
Doc. 6 (D.N.H. May 12, 1997); id., Doc. 39 (D.N.H. Apr. 24,
1998).

Felker repeatedly approached ATHR, requesting that they find a new employee to carry on ATHR's representation of Felker, anticipating the retirement or departure of ATHR's sales representatives.[2]  In 1990, ATHR selected Gregg Nolt, a sales manager for Felker in Territory 95, to become an associate of ATHR and to eventually become ATHR's successor.  Felker approved of ATHR's selection of Gregg Nolt and ultimately agreed to assign Territory 25 to him or his company.  Thereafter, from approximately April 1990 through December 1990, ATHR hired Gregg Nolt as an employee, trained him, introduced him to customers, and otherwise arranged for his succession.

On December 4, 1990, ATHR sold its assets to Hutchinson, Smith, Nolt and Associates, Inc. ("HSNA"), effective January 1, 1991, for $337,000 to be paid over a ten-year period.  Letters of appointment were issued by Felker to HSNA establishing HSNA as its sales representative.  Gregg Nolt was the sole shareholder, and officer and director of HSNA.  By April 1993, HSNA contested its debt and largely ceased its payments.  ATHR accelerated the debt on August 20, 1993, and then brought suit to collect the debt.  See ATHR, Inc. v. Hutchinson, Smith, Nolt & Associates, Inc., No. 93-467-M (D.N.H. filed Sept. 1, 1993) (ATHR v. HSNA).

_____

[2]The record also reflects Felker's dissatisfaction with ATHR's performance.

2

On or around October 3, 1995, at a conference of the parties in ATHR v. HSNA, the court indicated that it would grant summary judgment in favor of ATHR. In early October, Gregg Nolt allegedly informed Felker that he would not be able to continue working for HSNA as HSNA could not afford to defend ATHR's claims against it. On October 11, 1995, Felker issued a letter terminating HSNA's representation of Felker, effective on November 11, 1995, honoring the thirty day termination period provided for in Felker's contract. On October 12, 1995, as predicted, the court granted summary judgment in favor of ATHR. Felker was informed by ATHR's attorneys that all commission payments due to HSNA on Felker sales were to be forwarded to ATHR. Felker complied.

Although Felker began looking for a replacement for Gregg Nolt, it contracted with him to continue as its sales representative through November and December 1995 on an hourly basis. Gregg Nolt then informed Felker that he was affiliated with a new company, Nolt and Associates,[3] and that he wished to have Nolt and Associates assume the representation of Felker. Unable to find a suitable replacement for Gregg Nolt, on December 22, 1995, Felker appointed Nolt and Associates its sales

---

[3]Nolt and Associates is owned by Gregg Nolt's wife, Karen Nolt.

representative effective January 1, 1996. On or about July 24, 1996, the court in <u>ATHR v. HSNA</u> set the amount of damages to be paid to ATHR by HSNA at $300,000.

ATHR asserts that the defendants transferred assets to defraud ATHR and prevent it from collecting on its judgment against HSNA. In particular, ATHR argues that HSNA's payment to Gregg Nolt of W-2 salary payments from 1992 through 1996, allegedly amounting to $436,950, was fraudulent. ATHR also alleges that Gregg and Karen Nolt, Nolt and Associates, N-Tech, and Felker caused letters of appointment to be fraudulently transferred from HSNA to Gregg Nolt and ultimately to Nolt and Associates.[4] Moreover, ATHR alleges that Gregg Nolt fraudulently transferred his one-half share of his New York residence to his wife in April 1996. One dollar was given in consideration for the interest in the residence.[5] Finally, ATHR asserts that assets, $10,000 in particular, were fraudulently transferred to N-Tech from Gregg and Karen Nolt.

ATHR asserts that these transactions were fraudulent pursuant to New Hampshire Revised Statutes Annotated ("RSA") §

---

[4]The record reflects the existence of two letters although the parties refer to "a letter of appointment" as well.

[5]Plaintiff alleges that no consideration was given to Gregg Nolt for his interest in the Nolt residence, although the record indicates that the transfer was made for one dollar.

545-A, and that the defendants engaged in a conspiracy to accomplish the transactions. ATHR also asserts a claim under a theory of promissory estoppel against Felker.[6] Finally, ATHR asserts that Felker is liable for intentional interference with contractual relations. As all defendants move for summary judgment, the court addresses their arguments seriatim.

Standard of Review

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in that party's favor.'" Mesnick v.

---

[6]In its objection to the motions to dismiss, the plaintiff also argues a theory of equitable estoppel.

5

<u>General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)).

The defendants bear the initial burden of establishing the lack of a genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Quintero de Quintero v. Aponte-Roque</u>, 974 F.2d 226, 227-28 (1st Cir. 1992). However, once the defendants have submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)). Moreover, in considering a motion for summary judgment, the court must "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the claims in the case. <u>Id.</u> at 254. Where fraud is alleged, the plaintiff must provide sufficient evidence such that a reasonable juror could find the allegations proven with convincing clarity. <u>See</u> <u>id.</u> at 252; <u>Caledonia, Inc. v. Trainor</u>, 123 N.H. 116, 124, 459 A.2d 613, 617 (N.H. 1983); <u>Morin v. Dubois</u>, 713 A.2d 956, 957 (Me., 1995) (Applying clear and convincing standard to Maine's version of Uniform Fraudulent Transfer Act).

Discussion

A.   Defendants Gregg Nolt, Karen Nolt, Nolt and Associates, and N-Tech

1.   Salary

Gregg Nolt moves for summary judgment on the plaintiff's claim that the salary he was paid by HSNA between 1992 and 1996 constituted fraudulent transfers.[7]  He argues that summary judgment is warranted in his favor because the plaintiff has failed to raise a genuine issue of material fact regarding:  (1) the solvency of HSNA; (2) whether the salary paid Gregg was reasonable consideration for the services rendered; and (3) whether, in making the salary transfers, there was an intent to hinder, delay, or defraud ATHR.

RSA § 545-A:4 defines transactions that are fraudulent as to present and future creditors:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

---

[7]It is unclear on what basis the plaintiffs assert the 1992 transactions were fraudulent, but the issue need not be addressed in light of the court's conclusion.

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they become due.

RSA § 545-A:4 (1997). RSA § 545-A:4(II) lists factors to be considered in determining whether there was actual intent to hinder, delay, or defraud. The relevant considerations include whether the transfer was to an insider, whether the debtor had been or was threatened with suit, and whether the consideration received by the debtor in exchange for the assets transferred was reasonably equivalent.

Alternatively, ATHR might also establish the salary payments as fraudulent pursuant to RSA § 545-A:5(I) or (II). RSA § 545-A:5(I) requires that ATHR establish, among other things, that HSNA did not receive a reasonably equivalent value in exchange for the transfer, while § 545-A:5(II) requires that ATHR establish, among other things, that HSNA was insolvent at the time of the transfers. RSA § 545-A:2 defines insolvency as, inter alia, when the sum of the debtor's debts is greater than

8

all of the debtor' assets at a fair valuation.  It also provides that when the debtor is generally not paying his debts as they become due, insolvency is presumed.

Therefore, to avoid summary judgment, ATHR must provide appropriate evidence such that a reasonable juror could find HSNA either:  (1) had debts that exceeded its assets at the time of the salary transfers; (2) was generally not paying its debts as they became due at the time of the salary transfers; (3) did not receive a reasonably equivalent value in exchange for the salary paid to Gregg Nolt; or (4) made the payment of the salary with the intent to hinder, delay, or defraud ATHR.

ATHR relies upon HSNA's failure to pay the debt owed ATHR to establish that HSNA was not generally paying its debts as they became due.  In reviewing whether a party is generally paying its debts when due, the court considers, <u>inter alia</u>, factors such as the age of the party's unpaid debts, their total number and amount relative to the size of the party's enterprise, and the total number of unpaid creditors.

ATHR has presented no evidence regarding HSNA's payment of its other debts, the number, amount, or age of those other debts, nor the number of other creditors.[8]  The only pertinent evidence

---

[8]ATHR's mere allegations that HSNA was running a deficit and not paying its bills are insufficient to withstand summary judgment.

in the record is Gregg Nolt's statement in his affidavit that all of HSNA's uncontested debts were paid in the normal course of business. See Def.s' Mot. of Summ. J. as to Count I and II Pursuant to Fed. R. Civ. P. 56(c), Aff. of Gregg Nolt at 5 ("Def.s' Mot."). The simple fact that HSNA did not pay its debt to ATHR at a time when it was contesting that debt in court, without any other evidence regarding other debts and payments, is insufficient to establish that HSNA was "generally not paying its debts as they [became] due." RSA § 545-A:2(II). ATHR is therefore not entitled to the presumption that HSNA was insolvent during the period in which it paid Gregg Nolt his salary. Moreover, because ATHR presents no properly supported facts pertaining to HSNA's assets, nor to the sum of its debts, ATHR has failed to create a jury question as to whether HSNA was insolvent under RSA § 545-A:(I).

Gregg Nolt also moves for summary judgment asserting that reasonable consideration was received in exchange for the transfers of salary. Again, ATHR has provided no evidence that Gregg Nolt's services rendered for HSNA were not reasonably equivalent in value to the salary he was paid. In contrast, the record indicates that ATHR's officers were paid roughly $302,000 and $186,000 in 1988 and 1989 respectively. In 1992, Gregg Nolt received a salary of $78,616; in 1993, $112,734; in 1994,

10

$82,600; in 1995, $163,000.  Nolt was paid pursuant to employment contracts, was generally employed as president and sales manager, and was required to work sixty hours a week.  In several years, Gregg Nolt was paid less than the salary his employment contract provided.  Moreover, evidence in the record indicates that the salaries were deemed reasonable consideration when reviewed by an outside accounting firm.

ATHR could also show that the salary payments were fraudulent if there was actual intent to hinder, delay, or defraud ATHR.  ATHR argues that there is a genuine issue of material fact regarding intent.  Of the factors indicative of intent identified in RSA § 545-A:4, two are relevant that might support a finding of fraudulent intent:  the payment of salary to Gregg Nolt was payment to an insider, and the payment was made while suit was pending.[9]

In this case, however, neither of these factors could support a reasonable juror's finding that the transfers were made with the intent to defraud.  HSNA was a going business concern. From 1993 through 1995 it was contesting the debt owed to ATHR. During this time, if it was to continue as an operating business,

---

[9]Other factors potentially relevant, such as the reasonable equivalency of the consideration received by HSNA in exchange for Gregg Nolt's salary and HSNA's solvency, have been addressed, supra.

it had to pay its employees, in this case, Gregg Nolt.  The payments were routine and pursuant to employment agreements.  The record reflects that the payments, although higher in 1995 than in previous years, were within or below the range of average salaries paid by similar corporations for people in Gregg Nolt's position.  Evidence indicates the salaries were exchanged for services rendered of reasonably equivalent value.

The court concludes that ATHR has failed to establish a genuine issue of material fact regarding the intent of HSNA in transferring Gregg Nolt's salary.  If the record in this case could reasonably support a finding of fraudulent intent, no company that is embroiled in a lawsuit could continue to function and pay its stock-holding employees, officers, and directors, lest the salaries potentially be deemed fraudulent transfers and the employees made to answer for the debts of the company.  In short, the ability of the company to operate upon initiation of a lawsuit could be crippled as its "insider" employees would face the possibility of having the values of their salaries attached.  Summary judgment is therefore granted on the claim of fraudulent transfers of salary.

12

## 2. Letters of Appointment/Representative Function

The defendants seek summary judgment on ATHR's claim that "Gregg Nolt and Felker combined by concerted action to cause the transfer of the Felker representative function for Territory 25 from HSNA to Gregg Nolt, and later, to Nolt and Associates, all in violation of the applicable fraudulent transfer statutes."[10] Am. Compl. at 8; Def.s' Mot. at 1-2.[11] In opposing the motion for summary judgment ATHR identifies as a genuinely disputed issue of material fact whether HSNA was insolvent.[12] However, as discussed above in the context of the allegedly fraudulent transfers of salary, ATHR has presented insufficient evidence regarding HSNA's financial situation at the time of the salary transfers such that a reasonable juror could find HSNA insolvent, or that HSNA could be presumed to be insolvent. ATHR has offered

---

[10]No claim of fraudulent transfer was asserted directly against Felker, although the claim has bearing on Felker in so far as ATHR has asserted a claim of civil conspiracy against Felker. The court assumes, arguendo, as the parties have not raised the issue, that under the facts of this case the letters of appointment constitute assets transferred within the meaning of RSA § 545-A.

[11]The court notes that although the defendants' explicitly moved for summary judgment on all of ATHR's claims, no party presented an argument that addressed the alleged fraudulent transfer of the letters of appointment independent from the other alleged fraudulent transfers.

[12]ATHR identified other disputed issues it deems genuine and material, but none directly relevant to this claim.

no helpful additional evidence regarding HSNA's financial status at the time of the alleged transfer of the appointment letters.[13] Moreover, ATHR has not provided sufficient evidence regarding the value of the contract, terminable at will on thirty days' notice, or the value of what, if anything, was received in exchange for the letters of appointment.

The defendants have also contested the issue of intent. In his affidavit in support of the motion for summary judgment, Gregg Nolt attested that at no point in time did he "ever influence or attempt to influence Felker Brothers Corp. to cancel the letters of appointment with [HSNA]. [He] had no input into the Felker Brothers Corp.'s decision to cancel the letter of appointment from HSNA. [He] did not ask, seek, or in any way request the cancellation of the letter of appointment from HSNA." Def.s' Mot., Aff. of Gregg Nolt at 2. Minutes from the "Special Combined Meeting of the Board of Directors and the Stockholder of [HSNA]" reflect that "Felker Bros. Corp. had notified [Gregg

_____

[13]The only additional evidence regarding HSNA's fiscal condition is found in the Younker affidavit, where Younker, the president of Felker, stated that Gregg Nolt reported HSNA could not afford to continue to defend claims against it. The court finds this ambiguous statement, without more, to be insufficient to allow a juror to reasonably conclude ATHR established by clear and convincing evidence that HSNA was insolvent or was not generally paying its debts when due and hence fraudulently transferred assets. See infra.

14

Nolt] by telephone and by letter that [HSNA] at no fault of the corp., will be terminated as a Felker Bros. representative effective November 11, 1995." Def.s' Mot., Ex. B.

Don Younker, the president of Felker, attested that: "In early October 1995, Mr. Nolt told me he could no longer continue working for HSNA because HSNA could not afford to defend the claims against it. I was concerned about a replacement for Mr. Nolt and directed Felker's sales manager, Tom Henke, to look for a replacement for Mr. Nolt." Mot. for Summ. J. by Defendant Felker Brothers Corporation, Aff. of Don Younker at 3 ("Felker Mot."). Younker further testified that Felker terminated HSNA's sales representative position "because it appeared that Mr. Nolt was no longer going to be available as a sales representative for HSNA; Mr. Nolt told Felker that he would no longer be with HSNA, and HSNA had no other sales capacity. Neither I nor anyone else at Felker colluded with Mr. Nolt to interfere with the claims being made against his company." Id. at 4. "When Felker terminated HSNA, we expected to find someone other than Mr. Nolt to be a sales representative, and Felker made inquiries about the possibilities. In the meanwhile, during November and December 1995, Felker paid Mr. Nolt, on an hourly basis, for time he spent servicing existing accounts and orders. This was necessary because Felker wanted some representation in the region at that

15

time." Id. Finally, Younker stated that in "1995, Felker did not identify an individual for its sales representation who was better qualified than Mr. Nolt. Mr. Nolt informed Felker that he was to be affiliated with a new company, Nolt and Associates, and that he wanted to have this new company appointed as sales representative for Felker. With a letter dated December 22, 1995 . . . Mr. Nolt's company was appointed as sales representative for certain product lines for which Felker had need for a sales representative at that time." Id.

ATHR argues that summary judgment is unwarranted given: (1) the fact that Nolt's representation of Felker followed Nolt from HSNA, on an hourly basis, and ultimately to Nolt and Associates; (2) the relations of the parties, and (3) the chronology of events. The record, however, does not support a reasonable juror's finding that the defendants intended to delay, defraud, or hinder in this case.

Felker was presented with a situation where the company it contracted with to represent its products was losing its only sales representative. See Felker's Mot., Aff. of Don Younker at 3 (Felker's decision to terminate HSNA's letters of appointment stemmed from departure of its only sales representative). It therefore exercised its contractual right to terminate HSNA as its sales representative. Younker further attests that in an

16

effort to maintain continuous representation in the region, Felker resorted to contracting with Gregg Nolt on an hourly basis while Felker sought other representation. Id. at 4. Their efforts to locate other representation is not contested by ATHR. Unsuccessful in securing other adequate representation, Younker attests that Felker continued with Gregg Nolt as a sales representative as a fall-back because it needed to maintain representation in the area. See Felker's Mot., Aff. of Don Younker at 4. Moreover, Nolt attests that he did not influence or seek to influence Felker's termination of HSNA as its representative. See Defs' Mot., Aff. of Gregg Nolt at 2.

In cases where fraud is alleged, it is incumbent upon the plaintiff to proof such allegations by "clear and convincing evidence." See Caledonia, Inc. v. Trainor, 123 N.H. 116, 124, 459 A.2d 613, 617 (N.H. 1983); Morin v. Dubois, 713 A.2d 956, 957 (Me., 1995) (Applying clear and convincing standard to Maine's version of the Uniform Fraudulent Transfer Act). As discussed above, a court's consideration of a motion for summary judgment "necessarily implicates the substantive evidentiary burden of proof that would apply at the trial on the merits." Anderson, 477 U.S. at 252. In other words, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." Id. at 254. ATHR has failed to develop

17

adequate evidence in the record to withstand summary judgment as to the intent behind the alleged transfer of the letters of appointment.  On the record presented, no reasonable juror could find by clear and convincing evidence that the defendants fraudulently transferred the letters.

3.  Residence

Gregg Nolt challenges ATHR's claim that the transfer of his interest in his residence to his wife was fraudulent because Gregg Nolt did not owe any money to ATHR at the time the transfer was made, and because there is no evidence of a fraudulent intent on Gregg Nolt's part.[14]

RSA § 545-A:4 provides that a transaction, fraudulent under the statute, can occur before the creditor's claim arose and still be fraudulent as to that creditor.  See RSA § 545-A:4.  As a result, a person need not have a claim against another person, that is, they need not have an established creditor-debtor relationship at the time of the transaction for that transaction to be fraudulent under the statute.[15]  Consequently, ATHR need

_____

[14]The court understands Karen Nolt to join in this portion of the defendants' motion for summary judgment.

[15]Creditor is defined as "a person who has a claim," and debtor is defined as "a person who is liable on a claim."  RSA § 545-A:2 (1997).

18

not establish that Gregg Nolt was a debtor to ATHR at the time he transferred his interest in his residence as an element of its claim that the transfer was fraudulent.

Despite this, ATHR must at least establish that Gregg Nolt is now a debtor if it seeks to assert that the transfer of the residence to Karen Nolt was fraudulent. The only basis in the record for establishing a debt owed to ATHR by Gregg Nolt would stem from ATHR's allegations that Gregg Nolt participated in fraudulent transfers with HSNA. Because the court in this order grants summary judgment on the claims of fraudulent salary transfers and transfer of the letters of appointment, there is no basis in the record for establishing a debt that Gregg Nolt owes ATHR. Summary judgment must therefore be granted on the claim of fraudulent transfer of Gregg Nolt's interest in the residence.

4. N-Tech

ATHR first challenges the standing of Gregg and Karen Nolt to move for summary judgment on the allegedly fraudulent transfer to N-tech of $10,000. N-tech has defaulted in this case. See ATHR Inc. v. Gregg Nolt, et al., No. 97-191-JD, Doc. 39 (D.N.H. Apr. 24, 1998). ATHR asserts that because it seeks to avoid the transfer to N-Tech, N-Tech is the only defendant in this claim. Contrary to ATHR's characterization, the claim is part of Count

19

I, asserted against Gregg and Karen Nolt, N-Tech, and Nolt and Associates, alleging that they all engaged in fraudulent transfers. As relevant to this claim, the fraudulent transfer was allegedly made by Karen and Gregg Nolt to N-Tech.

Moreover, the court finds that the claim asserting a fraudulent transfer to N-Tech fails as a matter of law. First, ATHR has proffered evidence as to only one transfer of $10,000 to N-Tech. However, evidence in the record indicates that the transfer was made on October 23, 1995, in exchange for a demand note, which was repaid in full, with interest, on December 29, 1995. ATHR has provided no evidence raising a genuine issue of material fact about this transaction. No reasonable juror could find that there was any intent to hinder, defraud, or delay a creditor, nor that reasonably equivalent consideration was lacking, nor, on this record, that there was any insolvency involved. Moreover, because any transfers to N-Tech from Gregg Nolt and Karen Nolt would be fraudulent only if Gregg or Karen Nolt are debtors to ATHR, and as discussed above there is no basis for such a finding in this case, summary judgment is warranted on this claim as well.

B.  Felker

    1.  Promissory Estoppel

In count III, ATHR asserted that Felker is liable under a theory of promissory estoppel as follows:

> Felker's representations and conduct constituted a promise that they would give and leave its representation for Territory 25 with HSNA so that the amounts coming due to ATHR could be paid from HSNA's revenues from Felker.

Am. Compl. at 10.  In its objection to Felker's motion for summary judgment, ATHR argues that the count encompasses a claim for equitable estoppel as well.  The court assumes, arguendo, that it does.

Promissory estoppel "serves to impute contractual stature based on an underlying promise, and to provide a remedy to the party who detrimentally relie[d] on the promise."  Great Lakes Aircraft Co. v. Claremont, 135 N.H. 270, 290, 608 A.2d 840, 853 (1992).  Equitable estoppel does not involve a promise, but instead is premised upon a party's conduct or actions.  See id. Under equitable estoppel, "a wrongdoer may be estopped from making assertions, even if true, which are contrary to acts and representations previously made which are reasonably relied upon by the wronged party."  Id.  Significantly, both doctrines require that the reliance be reasonable.  See id.; Marbucco Corp. v. Manchester, 137 N.H. 629, 633, 632 A.2d 522, 524 (1993)

21

(reasonable reliance on promise states claim under promissory estoppel theory).

ATHR attests that Felker raised the issue of finding a new employee or associate repeatedly between 1986 and 1990, that Felker agreed to assign Territory 25 to Gregg Nolt or his company, and that it would assist in the succession process. However, these acts do not support a finding that Felker represented, through actions or words, that it would maintain HSNA as its sales representative for any particular period of time,[16] let alone that it would continue appointment of HSNA "so that amounts coming due to ATHR could be paid from HSNA's revenues from Felker." Am Compl. at 10. Nor does the record indicate that Felker assumed responsibility for ATHR's best interests in its dealings. Moreover, Felker's mere knowledge that HSNA's ability to pay ATHR was dependent upon HSNA's continued representation of Felker does not support a finding that Felker represented it would continue to engage HSNA as its sales representative. This was a risk ATHR assumed. Instead, Felker's actions reflect the actions of a self-interested company seeking to maintain the goodwill and contacts ATHR had developed overtime so that an eventual change in its representation would

_____

[16]Subject to the thirty day termination period provided for in the letters of appointment.

22

not cause a loss of business.  As a matter of law, based on the record presented for summary judgment, ATHR's purported reliance on Felker's actions was unreasonable and the promissory estoppel claim therefore fails.[17]

### 2.    Interference With Contractual Relations

In count IV, the plaintiff asserts a claim against Felker for intentional interference with contractual relations.[18]  New Hampshire recognizes the tort of intentional interference with the performance of a contract by a third person.  See, e.g., Hangar One Inc. v. Davis Assocs., Inc., 121 N.H. 586, 589, 431 A.2d 792, 794 (N.H. 1981).  In Hangar One, the New Hampshire Supreme Court embraced the legal standard articulated in Restatement (Second) of Torts § 766 (1979), which provides as follows:

> One who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting

---

[17]The court also notes that ATHR's course of business with Felker provided notice to ATHR that Felker customarily reserved the right to terminate its sales representation contracts.

[18]ATHR titles the count "Interference With Contractual Relations And/Or Business Advantage."  See Am. Compl. at 11.  The court understands the count to assert a claim for intentional interference with contractual relations, which is consistent with ATHR's objection to Felker's motion for summary judgment.

23

> to the other from the failure of the third person to
> perform the contract.

It is necessary, therefore, that the interference be intentional and improper.

Intent exists if:  (1) "the actor acts for the primary purpose of interfering with the performance of the contract;" (2) "if [the actor] desires to interfere, even though [the actor] acts for some other purpose in addition;" and (3) if the actor does not act for the purpose of interfering with the contract, nor desires it, "but knows the interference is certain or substantially certain to occur as a result of his action."  Id. In this case, given the nature of the relations between the parties, it is a reasonable inference that Felker was aware that cancellation of its letters of appointment establishing HSNA as its sales representative would interfere with ATHR's contract with HSNA.

ATHR argues that the interrelatedness of HSNA, Gregg Nolt, and Nolt & Associates, and Gregg Nolt's actual continued representation of Felker, is evidence that Felker had no legitimate business purpose in the transfer of its letters of appointment from HSNA to Nolt and Associates.

Restatement (Second) of Torts § 767 identifies factors to be considered in determining whether interference was improper:  (1)

24

the nature of the conduct; (2) the motive; (3) the interests of the other with whom the conduct interferes; (4) the interests to be advanced by the conduct; (5) the social interests in protecting the freedom of action of the actor; (6) the proximity or remoteness of the conduct to the interference; and (7) the relations among the actors.

In this case, the nature of Felker's conduct does not support a finding that Felker's acts were improper. First, in contrast to the examples identified in the <u>Restatement</u>, such as fraud, duress, violence, threats of physical or economic harm, or moral pressure, Felker terminated its contract with HSNA for sales representation pursuant to the terms of the contract after learning that HSNA was losing its only sales representative. Second, evidence regarding Felker's motive, that is, the timing of Felker's actions and Gregg Nolt's continued representation of Felker, are indicative of a legitimate motive of self-preservation on the part of Felker. Felker wished to have a knowledgeable representative familiar with the territory. The evidence does not provide the basis for a reasonable inference that there was an incentive or a motive on Felker's part to circumvent HSNA's debt to ATHR. <u>See also</u>, Felker Mot., Aff. of Don Younker at 3-5 (attesting to business circumstances, purposes, and state of mind of officers).

25

Third, enforcement of court orders and financial obligations are valuable interests to be protected. However, these interests do not warrant holding Felker to disadvantageous economic relations beyond its contract, nor does it warrant preventing Felker from pursuing its legitimate business interests lest liability be imposed, where Felker was neither a party to the debt nor to the court proceedings. Indeed, to find Felker's conduct on this evidence improper would threaten the substantial societal interest in the freedom of businesses to manage their affairs and to adjust to changing circumstances in a manner they deem most efficient and profitable within their legal responsibilities. Moreover, it would render contractual terms nugatory and give rise, in essence, to a de facto guarantor relationship.

Nor do the remaining Restatement factors support a finding that Felker's actions were improper. The evidence indicates that HSNA's failure to perform on its debt with ATHR preceded Felker's termination of HSNA. Moreover, Felker's contract with HSNA was terminable at will. The record indicates that the thirty day termination period was adhered to and that no contractual impediments to Felker's termination of the contract existed. Finally, there is no evidence that Felker assumed an obligation to ATHR. Therefore, the record shows no factual issue as to

26

whether Felker's actions constitute an improper interference with the plaintiff's contract. Summary judgment in favor of Felker is therefore warranted on this claim.

C.    All Defendants--Civil Conspiracy

In various forms all defendants move for summary judgment as regards ATHR's claim that they participated in a civil conspiracy. The "essential elements [of civil conspiracy] are: (1) two or more persons (including corporations); (2) an object to be accomplished (i.e., an unlawful object to be achieved by lawful or unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47, 534 A.2d 706, 709 (1987). Felker argues that there are no allegations "of facts that, if proved, would establish that Felker engaged in any unlawful acts or acted to accomplish any unlawful object." Mem. of Law in Support of Mot. for Summary J. By Def. Felker Bros. Corp. at 13. As is evident from the above discussion, the other defendants contest the merits of each alleged fraudulent transfer they purportedly conspired to commit.

Under New Hampshire law "there is no such thing . . . as a civil action based on conspiracy alone." Town of Hooksett School

27

District v. Grace & Co., 617 F. Supp. 126, 133 (D.N.H. 1984). "The ground for recovery is found in the acts done, not the plans made." Fitzhugh v. Railway, 80 N.H. 185, 189, 115 A. 803, 805 (1921).

The court has already dispensed with ATHR's claims of fraudulent transfers, as well as it claims of promissory estoppel and interference with contractual relations. There are no other allegations of wrongful acts remaining in the plaintiff's amended complaint beyond the conspiracy claim. As such, any claim of conspiracy against the defendants must necessarily fail.


## Conclusion

In light of the above discussion, the court grants the defendants' motions for summary judgment (documents no. 42 and 43). The clerk is ordered to close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

December 8, 1998

cc:  William Edward Whittington IV, Esquire
     Charles P. Bauer, Esquire
     David A. Garfunkel, Esquire
     Russell F. Hilliard, Esquire
     Charles A. Szypszak, Esquire